IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

——————

**WILLIAM GARDNER** and
**DONALD GARDNER**

    Plaintiffs,

v.                                                                                 No. CIV 96-1515 BB/WWD

**BOARD OF COUNTY COMMISSIONERS**
**OF MCKINLEY COUNTY,** et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs' June 11, 1998 motion for partial summary judgment (Doc. 113). The purpose of this motion is to determine whether Defendants may assert that they had probable cause to effect a warrantless arrest of Plaintiffs, who were allegedly in violation of An Amended Order Prohibiting Domestic Violence ("Order") issued by a state court judge. Having reviewed the submissions of the parties, and having considered the applicable law, the Court finds that Plaintiffs' motion for summary judgment should be GRANTED.

I.    **Factual Background**

This case arises from events surrounding the August 12, 1995 arrest of Plaintiffs William Gardner and Donald Gardner (Plaintiffs). On Saturday, August 12, 1995, Plaintiffs drove to the Blue Corn Café in Ramah, New Mexico. While at the Blue Corn Café, Donald Gardner made inquiries about Ms. Susan Gardner. Although Ms. Gardner was not working at the Blue Corn

Café on August 12, she was employed by the Café. Ms. Gardner had an amended order prohibiting domestic violence against Rex Gardner, which was filed in state district court in McKinley County, New Mexico on March 24, 1995. Rex Gardner is the son of Plaintiff Donald Gardner and the nephew of Plaintiff William Gardner. Susan Gardner and Rex Gardner had not been living together since 1994.

At some point after Donald Gardner made his inquiries about Ms. Gardner, Leah Rupp, the owner of the Blue Corn Café, telephoned Susan Gardner and informed her that her father-in-law and his brother were at the restaurant. Ms. Gardner telephoned the McKinley County Sheriff's Office and told them that Plaintiffs were in Ramah and that she had a restraining order against Rex Gardner. Ms. Gardner spoke on the phone with Defendant Joe Diaz, from the Sheriff's Office, about the Restraining Order. Ms. Gardner never made out a petition for an order prohibiting domestic violence against anyone other than Rex Gardner and he was the only respondent on the order filed by Ms. Gardner.

After locating the restraining order, Defendant Diaz agreed by phone to meet with the Plaintiffs at the Blue Corn Café. Arriving at the restaurant, Defendant Diaz was accompanied by Defendants Officer Linville and Officer Allen. A brief conversation ensued between the parties inside the Café, and eventually the discussion moved outside the restaurant. The parties disagreed about the applicability of the domestic order and the conversation became more contentious. Ultimately, Defendants made a warrantless arrest of Plaintiffs for violation of the Domestic Violence Order, resisting arrest, and disorderly conduct. (Doc. 114 at Ex. 8).

On October 31, 1996, Plaintiffs brought suit against Officers Diaz, Allen, and Linville for violation of their civil and constitutional rights (Doc. 1, 40). In their response, filed December 10,

2

1996, Defendants put forth a number of affirmative defenses, including a qualified immunity defense, and an assertion that the arrest of the Plaintiffs was based on probable cause. (Doc. 3, 50). At issue in Plaintiffs' motion for partial summary judgement is whether Defendants may assert that they had probable cause to effect a warrantless arrest of Plaintiffs for their alleged violation of the Domestic Violence Order. Plaintiffs concede that the motion has no effect on the question of whether Defendants had probable cause to arrest them for disorderly conduct or resisting arrest.[1]

**II.   Analysis**

### A. Summary Judgment Standard

Before addressing the substance of Plaintiffs' motion, the Court notes that, "[s]ummary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party. Id.

### B. Motion for Partial Summary Judgment to Strike an Affirmative Defense

In the criminal complaint filed by Defendants Linville and Allen, Plaintiffs were charged with disorderly conduct, resisting arrest, and violation of District Court Restraining Order #95-40. (Doc. 114 at Ex.11). In support of their second amended complaint for violation of constitutional

---

[1] "A ruling in favor of plaintiffs on this motion...does not preclude the defendants from presenting to the jury their claim that they had probable cause to arrest the plaintiffs because they were allegedly committing the misdemeanor crimes of disorderly conduct and resisting arrest." (Doc. 116, at 11). The Court also notes that Plaintiffs did not assert that they are entitled to summary judgment on Defendants' qualified immunity defense.

and civil rights, Plaintiffs allege in Count I that Defendants Allen , Linville and Diaz deprived Plaintiffs of their rights by detaining them and arresting them without probable cause and by using excessive, unnecessary and unreasonable force and seriously injuring them in the course of that false arrest. (Doc. 40 at 9,10).  In their answer, Defendants assert a number of affirmative defenses, including 1) they are entitled to absolute and/or qualified immunity from Plaintiffs' claims and 2) the arrest of Plaintiffs was based on probable cause.  (Doc. 50 at 9,10). At issue in Plaintiffs' motion for partial summary judgement is whether Defendants' may assert that they had probable cause to effect a warrantless arrest of Plaintiffs based on the alleged violation of the Domestic Violence Order.

In effect, the Plaintiffs are asking this Court to strike Defendants' affirmative defense of probable cause through a motion for partial summary judgment. This raises an interesting question for the Court, and one that has not been much discussed, whether the Court may grant a partial summary judgment disposing of on an affirmative defense. See 10b Wright, Miller & Kane Federal Practice and Procedure Civil §2737 (3d ed. 1998).  Some courts have ruled that partial summary judgment is not available to dismiss an affirmative defense, and a Rule 12(f) motion to strike is the proper procedure. Id.; see Krauss v. Keibler-Thompson Corp., 72 F.R.D. 615 (D.Del. 1976) (The weight of authority and a close textual examination of the Rules convinces this Court that a motion to strike an affirmative defense can be considered only as a Rule 12(f) motion and is not a proper motion under Rule 56(d)); see also Uniroyal, Inc., v. Heller, 65 F.R.D. 83, 86 (S.D.N.Y. 1974). However, the more accepted position, and the one this Court will follow, is to allow a party to utilize Rule 56(d) to strike an affirmative defense. See Wright, Miller & Kane, supra at 321; see also Inter'l Ship Repair v. St. Paul Fire Marine, 944 F.Supp. 886 (M.D.Fla.

1996); Koch Indus., Inc., v. United Gas Pipe Line Co., 700 F.Supp. 865, 867 (M.D.La. 1988) (allowing the utilization of summary judgment to dispose of affirmative defenses). As the Tenth Circuit stated in Hunt v. Pick, "[w]here multiple claims are made or multiple defenses are asserted the remedy [summary judgment] is proper if no genuine issue of fact exists relative to any one claim or defense that is determinative of part or all of the issues." Hunt v. Pick, 240 F.2d 782, 784 (10th Cir. 1957).

In this case, partial summary judgment may be used by the Court to dispose of an affirmative defense, in part or in whole.

### C. Probable Cause in § 1983 Claims

The constitutional validity of a warrantless arrest is analyzed under a probable cause standard. Beck v. Ohio, 379 U.S. 89, 91 (1964). A police officer's warrantless arrest is permissible if the officer has probable cause to believe that the person he is arresting has committed or is committing a crime. See Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995); Baptiste v. J.C. Penney Company, Inc., 1998 WL 348150 (10th Cir.); Berry, 796 F.Supp at 1405. "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Baptiste, 1998 WL 348150 at *3 (internal quotations omitted) (quoting Romero, 45 F.3d at 1476). The Court recognizes that probable cause must be evaluated, "in light of circumstances as they would have appeared to a prudent, cautious, trained police officer." United States v. Maher, 919 F.2d 1482, 1485,86 (10th Cir. 1990).

The Tenth Circuit has recognized that in civil rights cases like the one currently before the Court, an officer's probable cause to arrest is normally a question of fact for the jury:

> "It is true that the issue of probable cause ordinarily is for the judge rather than the jury. That is because the issue usually arises in the context of a motion to suppress evidence, which the judge decides. But where the issue arises in a damage suit, it is, as the panel opinion acknowledged, a proper issue for the jury if there is room for a difference of opinion. The underlying issue in deciding whether the police had probable cause to do what they did is reasonableness, which is also the underlying issue in deciding negligence–a classic jury issue."
> DeLoach v. Bevers, 922 F.2d 618, 622 (10th Cir. 1990)(citations omitted); see also Williams v. Weber, 905 F.Supp. 1502, 1507 (D.Kan. 1995).

Plaintiffs contend, however, that the Court should decide as a matter of law, that the Domestic Violence Order did not give Defendants probable cause to make a warrantless arrest. (Doc. 114 at 13). This Court agrees. Unlike DeLoach and Williams, the narrow underlying issue of this motion is a legal analysis, rather than a factual analysis of what the parties did or did not do in a certain circumstance.[2]

### D. Probable Cause to Arrest Under The Domestic Violence Order

An Amended Order Prohibiting Domestic Violence was filed March 24, 1995 in McKinley County, New Mexico. (Doc. 114 at Ex. 11).   When Defendants were first contacted by Ms. Gardner, she made reference to a Domestic Violence Order she had filed against Rex Gardner. (Doc. 114 at 5). The parties dispute what other information was relayed from Ms. Garner when she first spoke to Officer Diaz on the phone. (Doc. 114 at 5) (Doc. 115 at 2). While at the

---

[2] In DeLoach, alleged misstatements and omissions by officers in an application for an arrest warrant were material enough that the district court was justified in submitting the question of probable cause to the jury. In Williams, plaintiff's story and defendant's story regarding plaintiff's behavior during interrogation and pat down could not be reconciled without evaluating the truthfulness of each. The court left that task to the jury.

restaurant, the parties discussed the content of the Order, relevant portions of which read as follows:

> [Findings]
> ....
> "B. The *Respondent* did commit these acts of domestic abuse in violation of The Family Violence Protection Act, Sections 40-13-1 through 40-13-7, NMSA, 1978, necessitating that protection be given to Petitioner and all members of Petitioner's household."
> (Document 114 at Ex. 11) (emphasis added)
>
> [No Abuse provision]:
> "A. The *Respondent* shall not nor shall Respondent ask other persons to abuse the other party and members of Petitioner's household. 'Abuse' includes harassing...severe emotional distress, criminal trespass, criminal damage to property, repeatedly driving by a residence or work place, telephone harassment....
>
> B. The *Respondent* shall not ask or suggest to other persons to abuse the other party or the named household members."
> Id. (emphasis added)
>
> [Stay Away provision]
> ....
> "B. *Respondent* shall not go within 100 yards of Petitioner's: residence, place of employment, child(ren)'s school." Id. (emphasis added)

In their Response brief, Defendants argue that the Order raised the issue of "other person" becoming involved in the precluded abuse, and Plaintiffs could be implicated as the "other persons." (Doc. 115 at 12). The Order does reference "other persons", but the encumbrance is clearly on the "Respondent" to not engage or encourage others to engage in the prohibited conduct. If Plaintiffs acted in the manner alleged at the instruction of Mr. Rex Gardner it is Rex Gardner who should be found to have violated the order.

Defendants next assert that they read the Restraining Order in conjunction with the Family Violence Protection Act and that they believed the order encompassed Plaintiffs as well as Rex

Gardner. (Doc. 115 at 3,4,8). The Order makes clear reference to The Family Violence Protection Act (Act), N.M. Stat. Ann. §§ 40-13-1-13-7 (Michie 1978 & Supp. 1997). (Doc. 114 at Ex. 11).

The scope of Family Violence Protection Act has received limited analysis. See State v. Miller, 943 P.2d 541, 542 (N.M. App. 1997) ([T]he authority of the law enforcement officers to arrest an alleged abuser under the Act is contingent on such action being reasonably necessary to protect the victim from further domestic abuse."); State v. Gonzales, 940 P.2d 185,189 (N.M. App. 1997) (The Act was not intended to be the exclusive remedy for violating orders of protection, and a defendant can be charged with other crimes arising from an incident of domestic violence). It is clear however, that the statute was, "designed to provide protection to victims of domestic abuse." Lucero v. Pino 946 P.2d 232, 233 (N.M.App. 1997); see also §§ 40-13-3, 13-5. The Act provides protection of alleged victims of domestic violence in two ways; first, by means of a court order, and second through emergency assistance. See § 40-13-6, 13-7.

Upon a finding of domestic violence, the Act instructs that, "the court shall enter an order of protection ordering the respondent to refrain from abusing the petitioner...The court shall specifically describe the acts the court has ordered the respondent to do or refrain from doing." § 40-13-5. § 40-13-6 of the Act, authorizes, among other things, remedies for victims of domestic abuse, stating, "[A] police officer shall arrest without a warrant and take into custody a person whom the peace officer has probable cause to believe has violated an order pursuant to this section. § 40-13-6(C). Punishment for violating an order is contained in § 40-13-6(E).[3]

---

[3] In the criminal complaint filed by Defendants, Plaintiff were charged with violating § 40-13-6(E) which states,
> "A person convicted of violating an order of protection granted by a court under the Family Violence Protection Act is guilty of a misdemeanor and shall be sentenced in accordance with Section 31-19-1 NMSA 1978. Upon a second or

It is undisputed that Plaintiffs were not the Respondent identified on the Domestic Violence Order. (Doc. 114 at Ex. 11); See § 40-13-5. In the Order, the issuing Judge specifically described the acts the court ordered the respondent to do or refrain from doing.Id. On its face, the language of the Order, read in conjunction with the enforcement provision of the Act, could not have appeared to a prudent, cautious, trained police officer as probable cause to arrest Plaintiffs for violating the Order. Therefore, Defendants did not have probable cause to arrest Plaintiffs for violation of the Domestic Violence Order.

Defendants argue that, even if the Order itself did not provide probable cause, the Act provides a victim of domestic violence a second means of protection. Under § 40-13-7, "a person who allegedly has been a victim of domestic abuse may request the assistance of a local law enforcement agency."  Law enforcement responding to a request for assistance shall be required to take the necessary steps to protect the victim from further abuse, including

> "arresting the abusing household member when appropriate and including a written statement in the attendant police report to indicate that the arrest of the abusing household member was, in whole or in part, premised upon probable cause to believe that the abusing household member committed domestic abuse against the victim."
> § 40-13-7

Defendants rely on this section of the Act to support their final and argument. They assert that probable cause need not have existed for the charge of violating the Order, so long as it existed for the closely related charge of violating § 40-13-7. (Doc. 115 at 15,16).[4] It is not clear that the

---

> subsequent conviction, an offender shall be sentenced to a jail term of not less than seventy-two consecutive hours that shall not be suspended, deferred or taken under advisement."

[4] Some Circuits have ruled, "[W]here a defendant is arrested for the wrong offense, the arrest is still valid if probable cause existed to arrest the defendant for a closely related offense."

"related offense" doctrine has any force in the Tenth Circuit. Even if the Court were to apply the "related offense" doctrine to the facts of this case, Defendants' argument still fails.

None of the facts before the Court indicate that Plaintiffs committed abuse against Ms. Gardner warranting their arrest under § 40-13-7. Abuse, as defined by the Act includes, physical injury, severe emotional distress, bodily injury or assault, a threat causing imminent fear of bodily injury by any household member, criminal trespass, criminal damage to property, repeatedly driving by a residene or work place, telephone harassment, stalking, harassment, or harm or threatened harm to children. § 40-13-2(C). The only facts before this Court indicate Plaintiffs committed none of the acts enumerated in § 40-13-2(C). Plaintiffs presence and inquiries at Ms. Gardner's place of employment, when she herself was not present at work, does not constitute a threat of harm, stalking, harassment or other abuse, despite the fear it engendered in Ms. Gardner. Nor does it appear from the facts of the case that Plaintiffs repeadly stopped by Ms. Gardners work place. Therefore, there are not facts to support use of the related offense doctrine in this case.

### E. Qualified Immunity

---

U.S. v. Rambo, 789 F.2d 1289, 1294 (8th Cir. 1986). The Seventh Circuit decided, "[W]hile an arresting officer's subjective knowledge of facts sufficient to constitute probable cause is central to evaluation of the propriety of an arrest, we do not believe that the officers' view of the legal basis for the arrest is important." Richardson v. Bonds, 860 F.2d 1427, 1430 (7th Cir. 1988); see also Biddle v. Martin, 992 F.2d 673,676 (7th Cir. 1993)("We also note that in § 1983 actions for false arrest, probable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed for arrest on a closely related charge."). The Fifth Circuit ruled that a Defendant asserting the "related offense" doctrine must satisfy two conditions. Vance v. R.Nunnery, 137 F.3d 270, 273-76 (5th Cir. 1998) First, the charged and uncharged offense must be "related." Id. Second, the arresting officer must demonstrate that there was arguable probable cause to arrest the plaintiff for the uncharged related offense. Id.

Defendants, having failed to present the Court with a motion on qualified immunity, assert it as an alternative to their legal argument throughout their Response brief. (Doc. 115 at 2,16,21). Plaintiffs, in their Reply brief, state, "[T]hey [Defendants] cannot now attempt to insert this [qualified immunity] defense into the pretrial proceedings through their response to plaintiffs' motion for summary judgment." (Doc. 116. at 12).

Although probable cause to arrest may be found to be lacking, the Tenth Circuit has informed us that qualified immunity may still be a viable defense:

> "When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff. Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."
> Baptiste, 1998 WL 348150 at 3 (citing Romero, 45 F.3d at 1476 (1995)(internal quotation omitted))

"Defendants must raise the qualified immunity defense in order to benefit from the substantial shield it affords." Quezada at 718 (1991). Defendants may raise the defense in their answer, in a motion to dismiss, or a motion for summary judgment. Id. "Immunity ordinarily should be decided by the court long before trial." Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534,537, 116 LEd.2d 589 (1991). If defendants are unsuccessful in having their lawsuit dismissed on qualified immunity grounds before trial, they may reassert the defense at trial or after trial. Id. In fact, the Tenth Circuit has specifically stated that Defendants are not prevented from raising the qualified immunity defense "in the absence of a prior summary judgment motion." Melton v. City of Oklahoma City, 879 F.2d 706, 727 (10th Cir. 1989). Therefore, Defendants are free to raise the

qualified immunity defense should this case proceed to trial. The Court will not, however, address the issue at this juncture.

### III.     Conclusion

The Court stresses the limited scope of this order. With regard to Defendants' arrest of Plaintiff for violation of a Domestic Violence Order, the jury will not be presented with the question of whether probable cause existed for that arrest. However, Defendants may present the question of whether probable cause existed to arrest Plaintiffs on the other charged offense. Defendants are also not prevented from raising a qualified immunity defense at trial.

### **ORDER**

For the above stated reasons, Plaintiffs' motion for partial summary judgment (Doc. 113) is **GRANTED**.

Dated at Albuquerque this 23st day of September, 1998.

                                                                                                _____
                                                                                                BRUCE D. BLACK
                                                                                                United States District Judge

Counsel for Plaintiffs
       Lisa M Enfield
       Peter Schoenburg
       320 Central SW, Suite 30
       Albuquerque, New Mexico 87102

Counsel for County Defendants
       Ronald J. Childress
       6000 Uptown Blvd. NE, Ste 305
       Albuquerque, New Mexico 87110